**Nos. 24-5849 & 24-5894**

# In the
# United States Court of Appeals
## for the Sixth Circuit

EIGHT MILE STYLE, LLC; MARTIN AFFILIATED, LLC,

*Plaintiffs-Appellants/*
*Cross-Appellees,*

v.

SPOTIFY USA INC.,

*Defendant-Appellee/*
*Cross-Appellant,*

KOBALT MUSIC PUBLISHING AMERICA, INC.; HARRY FOX AGENCY, LLC,

*Defendants-Appellees* [24-5849]
*Defendants* [24-5894]

_____

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville, No. 3:19-cv-00736.
The Honorable Aleta Arthur Trauger, Judge Presiding.

## FIRST BRIEF OF PLAINTIFFS-APPELLANTS/CROSS-APPELLEES EIGHT MILE STYLE, LLC and MARTIN AFFILIATED LLC

DANIEL B. ASIMOW
ARNOLD & PORTER KAYE SCHOLER LLP
3 Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
(415) 471-3100

ELISABETH S. THEODORE
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000

RICHARD S. BUSCH
ANDREW H. DAVIS
DAVID M. NIEMIERZYCKI
KING & BALLOW
26 Century Boulevard, Suite NT700
Nashville, TN 37214
(615) 726-5422
rbusch@kingballow.com

*Counsel for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 6 Cir. R. 26.1, Appellants Eight Mile Style LLC and Martin Affiliated LLC hereby certify that:

1.  Neither is a subsidiary nor affiliate of a publicly owned corporation, and

2.  That there is no publicly owned corporation, not a party to the appeal, with a financial interest in the outcome.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS........................................................................ ii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..................................... viii

INTRODUCTION ...............................................................................1

JURISDICTIONAL STATEMENT ...........................................................4

ISSUE PRESENTED FOR REVIEW .........................................................5

STATEMENT OF THE CASE..................................................................5

    A.    The Copyright Act and the Licensing Process.....................................5

    B.    Eight Mile Owns or Exclusively Administers the EMS Compositions..................................................................................6

    C.    HFA Attempts To Assist Streaming Companies With Mechanical Licensing..................................................................8

    D.    Eight Mile Advises Spotify, Through Its Agent HFA, That Kobalt Lacked Authority to License the EMS Compositions .............9

    E.    Spotify's Launch First, License Later Approach ...............................12

    F.    The 2016 Blanket Mechanical License Agreement ............................15

    G.    Spotify's Infringement of the EMS Compositions ............................15

    H.    HFA's Role and Contribution to Spotify's Infringement ..................16

    I.    Eight Mile's Decision to Bring Suit.................................................18

    J.    Procedural History and Decision Below ...........................................19

SUMMARY OF ARGUMENT ................................................................20

STANDARD OF REVIEW ....................................................................22

ARGUMENT ...................................................................................23

I.    Eight Mile Was Entitled To Summary Judgment On Liability ..................... 23

    A.    The District Court Correctly Found that Eight Mile Established Prima Facie Copyright Infringement As a Matter of Law ................. 23

    B.    Spotify's Equitable Estoppel Defense Fails as a Matter of Law ........ 25

        1.    Spotify Failed to Raise Equitable Estoppel. ............................ 26

        2.    Spotify and HFA's Unclean Hands Bar Application of Equitable Estoppel. .................................................................. 26

        3.    Spotify Cannot Satisfy *Petrella*'s Equitable Estoppel Test ...... 29

        4.    Equitable Estoppel is Not Available Here Under Any Test ................................................................................................. 32

    C.    Eight Mile Was Entitled to Summary Judgment Against HFA .......... 48

II.    At Minimum, Disputed Facts Precluded Entry of Summary Judgment Against Eight Mile ............................................................................................. 49

    A.    The District Court Resolved Factual Disputes and Drew Improper Inferences Against Eight Mile .............................................. 50

    B.    The District Court's Bifurcation of the Action Below Should Preclude a Finding of Equitable Estoppel at Summary Judgment ............................................................................................. 55

CONCLUSION ................................................................................................. 56

CERTIFICATE OF COMPLIANCE .............................................................. 58

CERTIFICATE OF SERVICE ........................................................................ 59

ADDENDUM .................................................................................................... 60

DESIGNATION OF RELEVANT ORIGINATING DOCUMENTS .................... 60

DECISIONS NOT AVAILABLE IN PUBLICLY ACCESSIBLE ELECTRONIC DATABASES ............................................................................ 64

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   284 F. 3d 1091 (9th Cir. 2002) .........................................................................12

*ABKCO Music, Inc. v. Sagan*,
   50 F.4th 309 (2d Cir. 2022) ...............................................................................25

*Am. & Foreign Ins. Co. v. Sequatchie Concrete Servs., Inc.*,
   441 F.3d 341 (6th Cir. 2006) ...............................................................................4

*Bangkok Broad. & T.V. Co. v. IPTV Corp.*,
   742 F. Supp. 2d 1101 (C.D. Cal. 2010) ............................................................31

*Berhad v. Advanced Polymer Coatings, Inc.*,
   652 F. App'x 316 (6th Cir. 2016) ......................................................................50

*Bourne v. Walt Disney Co.*,
   68 F.3d 621 (2nd Cir. 1995) ..............................................................................23

*Bridgeport Music, Inc. v. 11C Music*,
   154 F. Supp. 2d 1330 (M.D. Tenn. 2001) .........................................................23

*Bridgeport Music, Inc. v. WB Music Corp.*,
   508 F.3d 394 (6th Cir. 2007) .......................................................................23, 48

*Carson v. Dynegy, Inc.*,
   344 F.3d 446 (5th Cir. 2003) ...............................................................31, 32, 34

*Cent. Illinois Pub. Serv. Co. v. Atlas Mins., Inc.*,
   146 F.3d 448 (7th Cir. 1998) .............................................................................26

*Crosley Corp. v. United States*,
   229 F.2d 376 (6th Cir. 1956) .............................................................................38

*Elvis Presley Enters. v. Elvisly Yours, Inc.*,
   936 F.2d 889 (6th Cir. 1991) .........................................................2, 26, 27, 29

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
   920 F.3d 421 (6th Cir. 2019) .............................................................................23

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ........................................................................23

*Ferring B.V. v. Allergan, Inc.*,
980 F.3d 841 (Fed. Cir. 2020) ........................................................53

*Fitzgerald Truck Parts & Sales, LLC v. United States*,
671 F. Supp. 3d 839 (M.D. Tenn. 2023) .........................................50

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) ............................................................49

*Fox Film Corp. v. Doyal*,
286 U.S. 123 (1932)........................................................................47

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
No. 3:17-cv-42, 2019 WL 4647305 (S.D. Ohio Sept. 24, 2019) ...............31, 39

*Gilliam v. ABC*,
538 F.2d 14 (2d Cir. 1976) .............................................................24

*Heckler v. Cmty. Health Servs. of Crawford*,
467 U.S. 51 (1984).........................................................................26

*J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*,
936 F.2d 1474 (6th Cir. 1991) ........................................................50

*Johnson v. Jones*,
149 F.3d 494 (6th Cir. 1998) ..........................................................24

*Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*,
395 F.3d 338 (6th Cir. 2005) ..........................................................49

*MGM Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)...................................................................12, 48

*Mich. Express, Inc. v. United States*,
374 F.3d 424 (6th Cir. 2004) ...............................................30, 32, 42

*Murphy v. Lazarev*,
589 F. App'x 757 (6th Cir. 2014) ...................................................24

*NCR Corp. v. Korala Assocs., Ltd.*,
  512 F.3d 807 (6th Cir. 2008) ................................................................48

*Ohio State Univ. v. Redbubble, Inc.*,
  989 F.3d 435 (6th Cir. 2021) ...............................................................23

*Oppenheimer v. Scarafile*,
  2022 WL 2704875 (D.S.C. July 12, 2022) ..........................................47

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014).............................................................2, 30, 31, 32, 38

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
  324 U.S. 806 (1945).............................................................................27

*Richardson v. City of Boston*,
  60 U.S. 263 (1856)...............................................................................31

*Spanski Enters. v. Telewizja Polska S.A.*,
  222 F. Supp. 3d 95 (D.D.C. 2016)......................................................31

*Taft Broad. Co. v. United States*,
  929 F.2d 240 (6th Cir. 1991) ...............................................................49

*Townsend v. Rockwell Automation, Inc.*,
  852 F. App'x 1011 (6th Cir. 2021) ......................................................33

*TWM Manufacturing Co. v. Dura Corp.*,
  592 F.2d 346 (6th Cir. 1979) ................................................2, 29, 31, 33, 36, 42

*UMG Recordings, Inc. v. Mahakkapong*,
  No. 14-cv-07229, 2015 WL 12803768 (C.D. Cal. Feb. 9, 2015)......................48

*United States v. Perez-Torres*,
  15 F.3d 403 (5th Cir. 1994) .................................................................26

*Walden v. Gen. Elec. Int'l, Inc*,
  119 F.4th 1049 (6th Cir. 2024) ............................................................41

*Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*,
  1994 WL 471414 (C.D. Cal. Mar. 3, 1994)........................................29

**Statutes**

17 U.S.C.
  § 114..................................................................................................5
  § 115...............................................................................................5, 6
  § 115(b)(1) (2017) ........................................................................13
  § 115(e)(10) ...................................................................................16

28 U.S.C.
  § 1291..............................................................................................4
  § 1331..............................................................................................4
  § 1338(a) ........................................................................................4

Music Modernization Act, Pub. L. No. 115-264, 132 Stat. 3676 (2018) .................6

**Regulations & Rules**

79 Fed. Reg. 14739 (May 23, 2014) .......................................................35

Fed. R. Civ. P. 54(b) .............................................................................4

**Other Authorities**

1 *Nimmer on Copyright* § 2.03[B][1] (2025)............................................5

1 *Nimmer on Copyright* § A.05 (2024)..................................................47

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Fed. R. App. R. 34(a) and 6 Cir. R. 34(a), Appellants Eight Mile Style, LLC and Martin Affiliated LLC, respectfully request oral argument. The District Court's summary judgment decision and the record on appeal involve multiple issues, the resolution of which requires consideration of an extensive factual record and presents significant legal questions. Appellants further state that the District Court's equitable estoppel analysis deviates from longstanding jurisprudence from the Supreme Court and this Court and will impact music publishers in this Circuit and around the nation. Appellants submit that oral argument will significantly aid the Court's decisional process.

**INTRODUCTION**

In the first thirty pages of its sixty-two-page opinion, the district court found that Spotify reproduced and distributed 242 compositions owned or administered by Plaintiff-Appellants Eight Mile Style, LLC and Martin Affiliated LLC (collectively, "Eight Mile") billions of times without any licenses to do so. Those compositions include famous, evergreen songs, such as Eminem's Academy-Award-winning *Lose Yourself*. The district court methodically rejected Spotify's contentions that it had procured express, implied, or compulsory licenses. It commented, "companies like Spotify … faced powerful incentives to play fast and loose with copyright law," and in the "rush to build their businesses" companies like Spotify failed to obtain "many necessary rights" with the result that "many recordings that should not have been streamed were." Memorandum Order on Summary Judgment ("Order"), RE.704, PageID#64235-36. Accordingly, the district court held that Eight Mile "established a strong *prima facie* case of copyright infringement and is entitled to summary judgment" regarding liability "unless Spotify can avail itself of some valid affirmative defense." *Id.* at PageID#64268.

The district court proceeded to fault Eight Mile for not suing sooner and found that equitable estoppel applied as a matter of law. On that basis, the district court denied Eight Mile's summary judgment motion and granted summary judgment motions of Spotify and co-defendant Harry Fox Agency, LLC ("HFA").

1

The district court's equitable estoppel ruling rested on multiple errors. First, parties invoking an equitable defense must come to court with clean hands and act with "utmost good faith." *Elvis Presley Enters. v. Elvisly Yours, Inc.,* 936 F.2d 889, 895 (6th Cir. 1991). Yet, the district court found the opposite: Spotify played "fast and loose" and attempted to create the false impression that it had obtained licenses by serving backdated Notices of Intention to Obtain a Compulsory License for Making and Distributing Phonorecords ("NOIs") that were "legally ineffective and served no legitimate purpose." Order, RE.704, PageID#64255. Spotify is not entitled to the benefit of any equitable defense.

Second, the district court applied the wrong standard. In a recent decision finding that laches is unavailable in copyright cases, the Supreme Court clarified that equitable estoppel applies only in narrow circumstances: "when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception." *Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 684 (2014). The district court did not apply this standard. The court cited—and the record contained—no evidence of any representations, misleading or otherwise, from Eight Mile to Spotify or anyone else.

Third, the district court erred even under pre-*Petrella* precedent. Under this Court's decision in *TWM Manufacturing Co. v. Dura Corp.*, 592 F.2d 346, 350 (6th

Cir. 1979), "[f]or silence to work an estoppel," there must be evidence that the copyright owner knew that infringement was occurring, that the owner intended its conduct to be acted on to the infringer's detriment, that the infringer was unaware of the true facts, and that the infringer relied on the copyright owner's conduct to its detriment. The record provides support for none of those findings. Indeed, the district court admitted there was no "direct evidence of why Eight Mile Style allowed this situation to persist," but speculated that it was based on a strategic decision to maximize the value of litigation. Order, RE.704, PageID#64275-76. This both improperly shifted the burden to Eight Mile to justify purported delay and is contrary to the record. Delay did not increase the value of litigation; if anything, it reduced it, given the Copyright Act's three-year statute of limitations and intervening legislation that could limit Eight Mile's ability to recover.

Moreover, while the district court identified reliance as an element of estoppel under the test it purported to apply, the district court failed to analyze whether Spotify reasonably relied on Eight Mile's conduct to its detriment. Any notion that Spotify did reasonably rely is belied by the record. Spotify's policy was stream first, deal with the consequences later. At one point, Spotify featured 6.6 million streamable tracks for which it had no licenses; every stream was copyright infringement. Kanner Email, RE.671-3, PageID#61453. No witness provided

evidence that Spotify continued to stream the 242 compositions at issue in this case without a license in reasonable reliance on anything Eight Mile said or did.

For these reasons, the district court should have granted Eight Mile's motion for summary judgment. At minimum, it should have denied Spotify's and HFA's summary judgment motions—its finding that equitable estoppel applied as a matter of law rested on speculation as well as credibility determinations and factfinding that should have been left to a jury.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1338(a), as the controversy arose under the Copyright Act and Copyright Revision Act of 1976.

This Court has jurisdiction under 28 U.S.C. §1291. The district court denied Eight Mile's summary judgment motion and granted summary judgment to Spotify and HFA on August 15, 2024. Order, RE.704, PageID#64234-295; Order, RE.705, PageID#64296-97. Judgment was entered pursuant to Fed. R. Civ. P. 54(b) on September 6, 2024. Entry of Judgment, RE.722, PageID#65054. Eight Mile timely appealed on September 17, 2024. Notice of Appeal, RE.732, PageID#65839-43. Both the grant of summary judgment to Spotify and HFA and the denial of Eight Mile's summary judgment motion are appealable. *Am. & Foreign Ins. Co. v. Sequatchie Concrete Servs., Inc.,* 441 F.3d 341, 344 (6th Cir. 2006).

## ISSUE PRESENTED FOR REVIEW

The issue presented is whether the district court erred in denying Eight Mile's motion for summary judgment and granting Spotify's and HFA's motions on the basis that Eight Mile was equitably estopped from asserting its copyright infringement claims.

## STATEMENT OF THE CASE

### A.    The Copyright Act and the Licensing Process

As the district court noted, "[t]he Copyright Act recognizes two distinct sets of rights in connection with recorded music: first, rights in musical compositions, which the act refers to as 'musical works'; and second, rights in the recorded performances of compositions, which the Act refers to as 'sound recordings.'" Order, RE.704, PageID#64238 (citing 17 U.S.C. §§114-115). These are usually called, respectively, the copyrights in the *composition* and the *recording*. Music streaming implicates both sets of rights and requires licenses to reproduce both the composition and the recording. The license to reproduce the composition is often called a "mechanical license"—an anachronism from the days of player piano rolls that mechanically reproduced musical compositions. 1 *Nimmer on Copyright* §2.03[B][1] (2025).

Rights to a composition may be procured by voluntary licenses (express or implied) or by means of the compulsory license process, without the affirmative

consent of the rights holder. 17 U.S.C. §115 (2017). Specifically, once a copyright owner distributes the composition to the public (*e.g.,* by creating and selling a recording of it), anyone can obtain a compulsory license in the composition by following the requirements set out in the copyright regulations, including, most importantly, serving an NOI on the copyright owner or to the Copyright Office. However, the NOI had to be served *before* the putative licensee distributes the composition. Order, RE.704, PageID#64239.[1] If a compulsory license has been procured, the licensee must pay royalties at a statutory rate.

## B.    Eight Mile Owns or Exclusively Administers the EMS Compositions

Eight Mile is a small, independent music publisher. Its manager is Joel Martin and it works with an independent contractor, Sarah Catlett, who assists with administration. Order, RE.704, PageID#64244. Mr. Martin is also associated with a separate music company, Bridgeport Music, Inc. ("Bridgeport"). Eight Mile owns (or has exclusive administration rights to) the copyrights to 242 musical compositions—the EMS Compositions—made popular, for the most part, by the rapper Marshall Mathers, p/k/a Eminem. One of those compositions—Eminem's

---

[1]This requirement was changed by the Music Modernization Act ("MMA"), Pub. L. No. 115-264, 132 Stat. 3676 (2018). Because Spotify began streaming in the U.S. in 2011, the pre-MMA law is applicable to the question of whether Spotify obtained a compulsory license.

*Lose Yourself—alone* has been streamed on Spotify billions of times. Eight Mile's Response to Spotify's SUMF, RE.669, PageID#60621.

As the streaming economy developed, demands on independent music publishers for licenses to their compositions, as well as the complexity of collecting, understanding, and verifying royalty payments—stemming from billions of individual streaming transactions—have increased exponentially. At deposition, Mr. Martin explained that rather than transferring control of licensing and administration of the EMS Compositions to a major music publisher, Eight Mile opted to instead maintain control of licensing decisions by appointing Bridgeport as administrator, while outsourcing the increasingly complex revenue collection and royalty distribution tasks to Kobalt Music Publishing America, Inc. ("Kobalt"). Kohn Rebuttal Report, RE.654-7, PageID#56974-87.

Eight Mile was among Kobalt's first U.S. clients when it began as a technology start-up in 2000. Pattenden Depo., RE.622-5, PageID#50174; Kobalt's Response to Spotify's SUMF, RE.594, PageID#46427-29. By the time of Spotify's launch in 2011, Kobalt had become a significant independent music publisher and rights administrator, helping independent publishers, family estates, and other music copyright owners who chose to follow the independent model forged earlier by Eight Mile. *Id*.; *see* Kohn Rebuttal, RE.654-6, PageID#56938-40.

From 2011, Bridgeport had the right to grant mechanical licenses to EMS Compositions in the United States (and was the party to whom NOIs should have been directed), but licensees were instructed to report and pay royalties to Kobalt.[2] As the district court recognized, Kobalt served in that royalty-focused role at all relevant times, and thus had no actual licensing authority in the United States. Order, RE.704, PageID#64262-63.

## C.   HFA Attempts To Assist Streaming Companies With Mechanical Licensing

HFA was established in 1927 to represent music publishers in connection with mechanical licensing. Until 2009, HFA served *only* music publishers and songwriters, but that year, it was hired by Napster to provide services for the first time to licensees, rather than licensors. Raso Depo., RE.665-13, PageID#60152, (unredacted at RE.363-1, p. 7). HFA used its database of publishers and administrators associated with compositions to assist streaming companies in serving NOIs and obtaining compulsory licenses to compositions. When Spotify hired HFA in 2010, HFA's database was limited to its affiliated publishers, and it

---

[2] For a brief period predating any of the copyright violations at issue here, Eight Mile had authorized Kobalt to act as both licensing administrator and collection agent. 2009 Kobalt Agreement, under seal at RE.356-20, pp.1-31. On January 1, 2011, however, Eight Mile terminated its 2009 administration agreement with Kobalt and contracted with Bridgeport Music to replace Kobalt as exclusive administrator for the EMS Compositions. 2010 Termination, under seal at RE.358-1, pp.1-3; 2011 Agreement, under seal at RE.358-2, pp.1-51. Kobalt retained its role as collection agent. *Id.*

lacked the wherewithal to build a comprehensive database that would allow Spotify or other streaming companies to obtain all the necessary mechanical licenses for millions of compositions before launching. Corton Decl., RE.654-11, PageID#57264. Indeed, Spotify itself expressed doubts about whether HFA was up to the task when it hired it. Busby Email, RE.663-5, PageID#59487; Selden Depo., RE.666-19, PageID#60413; Bridgewood Depo., RE.666-20, PageID#60443 (unredacted at RE.370-5, p.18, 162:21-25).

### D. Eight Mile Advises Spotify, Through Its Agent HFA, That Kobalt Lacked Authority to License the EMS Compositions

In 2011, when Bridgeport became the licensing administrator and Kobalt remained collection agent for the EMS Compositions, the record shows that HFA had no technical ability in its song registration databases to distinguish between, on the one hand, a *publisher/administrator* which had mechanical licensing authority and, on the other, a *collection agent* which only had the authority to receive royalty payments and statements (with no authority to issue licenses). Smith Depo., RE.659-10, PageID#58453 (unredacted at RE.360-3, p.29, 407:11-25); Raso Depo., RE.665-13, PageID#60152; Jackson Depo., RE.666-16, PageID#60343-44 (unredacted at RE.366-9, p.4-5, 391:22-394:21). In other words, only Bridgeport **_or_** Kobalt could be registered with HFA for the EMS compositions. *Id*. Mr. Martin was aware of this shortcoming in HFA's database based on his prior interactions with HFA. Martin Decl., RE.659-2, PageID#58371. Indeed, the record shows it was not until 2019 that

HFA developed the ability to have its database designate one party as having the exclusive "authority to license" the compositions and another party as the payee, or "collection agent," to receive mechanical royalty payments from HFA. Kohn Depo., RE.666-22, PageID#60460.

The record also shows it was essential that all royalty payments and reports, including mechanical royalties and reports, flow through Kobalt and not directly to Eight Mile or Bridgeport to ensure Kobalt was collecting all license revenue and generating accurate royalty statements for Eight Mile, its co-publishers, and songwriters. Martin Depo., RE.666-18, PageID#60363-67; Martin Decl., RE.671-24, PageID#61651-52. If Kobalt were unable to collect all mechanical royalties from HFA, mechanical royalties to the respective co-publishers and songwriters could be inaccurate. *Id*.

Because it was not possible in 2011 to reflect in the HFA database that Bridgeport was the administrator and Kobalt was the collection agent, Mr. Martin did not change the registrations in HFA's database, which already reflected Kobalt as the appropriate party to receive payments and statements. The district court recognized that Eight Mile's explanation for not taking action to change the registration from Kobalt to Bridgeport was "plausible," because, as Eight Mile reasoned, "simply substituting Bridgeport for Kobalt in databases" could have

"caus[ed] a problem for Kobalt in its royalty collection responsibilities." Order, RE.704, PageID#64251.

There was no attempt to obscure the distinction between Kobalt and Bridgeport. On at least three separate occasions, Kobalt told HFA it lacked authority to license the EMS Compositions. February 2016 Emails, RE.659-12, PageID#58472-75; March 2015 Emails RE.659-13, PageID#58476-78; August 2013 Emails, RE.659-14, PageID#58479-82. Specifically, on August 6, 2013, Kobalt informed HFA that "[t]he 8 Mile Style catalog is no longer administered by Kobalt for licensing," and sent the same message on March 6, 2015, and February 17, 2016. August 2013 Emails, RE.659-14, PageID#58479-82. On the last instance Kobalt directed HFA to Bridgeport as "handl[ing] the mechanicals for anything 8 Mile Style." February 2016 Emails, RE.659-12, PageID#58473.

HFA's 30(b)(6) witness also confirmed that as early as 2013 HFA communicated to Spotify that Kobalt no longer administered the licenses for the EMS Compositions:

> **Q.    When Kobalt advised HFA in 2013 that it was not the licensing administrator for Eight Mile Style, did HFA then communicate that information to Spotify, yes or no?**
>
> **A.    In the response files, yes.**

Smith Depo., RE.659-10, PageID#58442 (emphasis added).

### E.    Spotify's Launch First, License Later Approach

As the district court observed, after illicit "peer-to-peer" streaming services like Napster and Grokster were shut down in the early 2000s,[3] "an ostensibly licit economy in music downloads and streaming arose." Order, RE.704, PageID#64235-36. That economy not only included Spotify, but competitors like Apple, Amazon, Google, and Pandora. *Id.* at PageID#64249. The district court continued,

> The fact that companies like Spotify avoided the overt, obvious infringement associated with peer-to-peer file sharing, however, did not mean that everything that they did was actually legal. In fact, such companies, in their jostling for market position, faced powerful incentives to play fast and loose with copyright law in the name of building the most comprehensive—and, therefore, enticing—music libraries possible. . . . In companies' rush to build their businesses, many necessary rights were obtained but many were not, and many recordings that should not have been streamed were.

*Id.* at PageID#64235-36.

Spotify, for its part, seemingly did not accept that it was necessary to license composition rights before making music available on its service. As Daniel Ek, CEO of Spotify, insisted in a public interview, **"I want all the world's content to be available the moment they release it… I'm not going to accept that there is all this content I want access to and I can't."** Ek Video Interview, RE.665-16, PageID#60180 (manually lodged) (emphasis added).

---

[3] *See A&M Records, Inc. v. Napster, Inc.*, 284 F. 3d 1091 (9th Cir. 2002); *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).

Indeed, Spotify hired HFA just seven months prior to Spotify's July 11, 2011 U.S. launch to help it procure the millions of mechanical licenses for musical works controlled by tens of thousands of music publishers. Kohn Report, RE.654-4, PageID#56782-94 (unredacted at RE.355-2, pp.120-131); New Yorker Article, RE.663-16, PageID#59542-49. Both Lucy Bridgwood, Spotify's U.S. counsel, and Lisa Selden, Spotify's Global Head of Licensing, testified that Spotify was frustrated with HFA. Selden Depo., RE.666-19, PageID#60413; Bridgewood Depo., RE.666-20, PageID#60443 (unredacted at RE.370-5, p.18, 162:21-25).    Bridgwood explained, "HFA had a lot of limitations on what they could process…[T]heir systems were not sophisticated enough to be able to deal with many different variations of terms." *Id.*

With respect to non-HFA affiliated publishers like Eight Mile, Spotify had to rely on compulsory licensing under Section 115 of the Copyright Act. In 2011, procuring a compulsory mechanical license required the generation and service of an NOI *before distributing* any phonorecords of the work. 17 U.S.C. §115(b)(1) (2017) (emphasis added). Pursuant to Spotify's 2010 Agreement with HFA, HFA was responsible for issuing these NOIs and the requisite accountings to the copyright owners of musical compositions.   HFA Administrative Agreement, under seal at RE.360-5, pp.20-22. HFA was not able to do so on a timely basis, with the result that many recordings started streaming without the necessary license.

Aware that HFA would be unable to send timely NOIs in the short time Spotify allotted to procure the requisite mechanical licenses prior to launch, Spotify took the remarkable step of instructing HFA to issue NOIs regardless of whether they were timely and effective. Smith Depo., RE.671-1, PageID#61440, 211:8-212:8. Spotify even told HFA to insert in these NOIs *past* dates of Spotify's initial distribution of the EMS Compositions in place of the information required in NOIs by Copyright Office regulations: the "expected" *future* dates of initial distribution. *Id*. HFA complied with Spotify's request to backdate the NOIs on its behalf. *Id*.

This practice of what the district court characterized as "sending facially ineffective NOIs" led to Spotify's streaming musical works—not just the EMS Compositions, but millions of other musical works—without having a license to do so. Order, RE.704, PageID#64280. At one point, *6.6 million tracks were available to steam on Spotify **without a license***. Eight Mile's Response to Spotify's SUMF, RE.669, PageID#60776-77 (unredacted at RE.436-1, pp.169-70). As one would expect, many lawsuits followed.[4]

---

[4] Two class actions by music publishers resulted in settlements in excess of $112.5 million, with Spotify admitting infringing over 300,000 musical compositions. *Ferrick v. Spotify USA, Inc.*, 2:15-cv-09929 (Jun. 27, 2016); Corton Report, RE.654-12, PageID#57277-78. To stave off potentially hundreds of other infringement suits, Spotify reached a public settlement with the National Music Publishers Association. *Id*. Other infringement cases were filed against Spotify and settled for undisclosed sums.

### F.    The 2016 Blanket Mechanical License Agreement

Spotify attempted to address this liability through blanket licenses with various entities in the music business. For instance, on December 15, 2016, Spotify entered into a blanket mechanical licensing agreement with Kobalt ("2016 BMLA"), through which Kobalt granted Spotify a license to reproduce compositions that Kobalt "owns, controls, or administers." Order, RE.704, PageID#64256. But Kobalt did not own, control or administer the EMS Compositions. Rather, they were owned by Eight Mile and administered by Bridgeport. Kohn Rebuttal, RE.654-8, PageID#57041-44; Corton Rebuttal, RE.654-13, PageID#57299-306. Accordingly, the district court found that the 2016 BMLA did not cover the EMS Compositions. Order, RE.704, PageID#64262-64.

The 2016 BMLA was an example of Spotify's intentional business practice of obtaining "blanket licenses" without even knowing what was in them.  As a consequence of these business practices, the court found, Spotify "could never know, for sure, whether it had the rights to *any* work" it streamed, except in the unusual case where it had an express license or had issued a valid, non-backdated NOI before streaming a work for the first time.  Order, RE.704, PageID#64280.

### G.    Spotify's Infringement of the EMS Compositions

Discovery in this action confirmed that the EMS Compositions, like millions of other copyrighted works, were streamed by Spotify without a license. Jessel Decl.,

RE.659-4, PageID#58384-85, 58394-98. Evidence reflects that 213 of the EMS Compositions were streamed without a license within the three-year statutory limitations period preceding this suit, and that 570 sound recordings embodying 37 EMS Compositions were *still* being streamed without a license during the pendency of the suit. *Id*. Because *each stream* constitutes its own act of infringement, Spotify committed over a billion acts of infringement of EMS's copyrights. 17 U.S.C. §115(e)(10).

### H.    HFA's Role and Contribution to Spotify's Infringement

HFA's role in implementing "Spotify's practice of sending facially ineffective NOIs" (Order, RE.704, PageID#64280) is undisputed. As HFA's general counsel and 30(b)(6) witness testified,

> **Q.    Why did you send them [the NOIs], though, in 2019 for songs that had been streaming on Spotify for years previous?**
>
> **A.    That is what we were told to do.**
>
> **Q.    By whom?**
>
> **A.    Spotify. They wanted us to issue the NOIs regardless of the date, expected date of distribution.**

Smith Depo., RE.659-10, PageID#58440.

In addition to untimely serving "facially ineffective NOI's"—which the district court found "difficult to justify by any standard" and having "no legitimate purpose"—HFA prepared and sent, on a monthly and/or quarterly basis, purported

statutory remittances and royalty statements knowing that such remittances and statements were not based on valid mechanical licenses. *Id.* at PageID#58430 (unredacted at RE.360-3, p.6, 64:16-65:14).

HFA has a century-old history in music licensing. During that time, it garnered a reputation as being a champion of music publishers and rights owners. *Id.* People who received an NOI or royalty payment which purported to be for a compulsory mechanical license would have trusted that it was associated with an existing, timely, and valid compulsory license. *Id.* Indeed, had such a mechanical license not existed, music publishers would reasonably expect HFA to notify them; publishers in the past often took legal action to enforce their copyrights with the help of HFA. Kohn Decl., RE.654-1, PageID#56597-600.

HFA's expert, Leeds Levy, admitted in deposition testimony that: (1) the statutory royalty rate is only effective if a valid compulsory license is in place, so the validity of HFA's royalty statements depends on that being so; (2) it is "certainly possible" that receipt of HFA's royalty payments at the statutory royalty rate could mislead a publisher like Eight Mile into believing a valid license was in place; and (3) a publisher like Eight Mile would have the ability to negotiate license terms if a compulsory license were not in place, including not allowing its musical compositions to be streamed.  Levy Depo., RE.665-12, PageID#60137-38, 60140, 60142.

## I.     Eight Mile's Decision to Bring Suit

Mr. Martin testified he did not realize that Spotify had failed to procure a license until 2018. He believed that Universal Music Group ("UMG"), the record label that controlled the copyrights to the relevant phonorecords, had issued pass-through mechanical licenses to third parties like Spotify. Martin Decl., RE.659-2, PageID#58371; Martin Depo., RE.670-15, PageID#61159. He explained further that because HFA was accounting to Kobalt for royalties on the EMS Compositions, he assumed that licenses were in place. *Id.* However, after an audit of UMG in 2018, Eight Mile began to question the licensing status of the compositions. After the audit was completed, Mark Levinsohn, transactional counsel for Eight Mile, sent the following email to HFA:

> As you may be aware, my clients [Eight Mile] are not members of Harry Fox Agency, Inc. ("HFA"), and have not authorized HFA to grant any licenses on their behalf. Therefore, we write to inquire about certain licenses that may have been issued by HFA with respect to each of the Compositions….

> Specifically, with regard to mechanical licenses issued, if any, please advise (i) which mechanical licenses HFA has issued to date for each of the Compositions; (ii) the date of issuance of such licenses; (iii) to whom such licenses have been issued; and (iv) on whose behalf the licenses where issued (i.e., the particular songwriter, publisher or administrator).

Levinsohn Email, RE.671-9, PageID#61493.

The correspondence between Mr. Levinsohn and HFA continued until 2019, when HFA provided Eight Mile a complete list of licenses it purported to have

granted. Eight Mile stated that only *then* did it learn of its potential claims against Spotify. 2018-2019 Levinsohn Emails, RE.666-10, PageID#60293-301 (unredacted at RE.366-3, pp.1-10). Following a period of investigation that confirmed the absence of a license, Eight Mile initiated the lawsuit.

The district court suggested that Eight Mile knew no later than 2016 that Spotify was infringing, or that it could have learned whether UMG had granted a license earlier, and could have notified Spotify of the absence of a license.  Order, RE.704, Page ID#64270-74. However, no party presented any evidence that *anyone* acting on behalf of Eight Mile *ever* gave any misleading statement to Spotify or acted in such a manner as to give Spotify the impression that Eight Mile intended to abstain from suit or that it had acquiesced to Spotify's infringement.

### J.    Procedural History and Decision Below

Eight Mile initiated this action against Spotify in August 2019. Complaint, RE.1, PageID#1. Spotify subsequently filed a third-party complaint against Kobalt, and Eight Mile amended its complaint to add HFA as a co-defendant for contributory and vicarious copyright infringement. Amended Compl., RE.97, PageID#783. The district court dismissed the vicarious liability claims, but allowed the contributory infringement claims to proceed. Order on Motion to Dismiss, RE.165, PageID#1453. The Court bifurcated this action into two phases: (1) liability and compliance with

the Music Modernization Act's ("MMA") requirements for the limitation on liability; and (2) damages. Initial Case Management Order, RE.89, PageID#686.

After discovery and expert discovery, the parties cross-moved for summary judgment. The district court held that Spotify did not have a license (compulsory, voluntary, implied, or otherwise) that would permit it to stream sound recordings embodying the EMS Compositions, and that Eight Mile would be entitled to summary judgment on liability unless Spotify could establish an affirmative defense. Order, RE.704, PageID#64261-68. The district court then concluded that equitable estoppel precluded Eight Mile from recovery as a matter of law. *Id.* at PageID#64268-84.[5] This appeal followed.

## SUMMARY OF ARGUMENT

The district court erred in denying Eight Mile's motion for summary judgment on liability. At minimum, the district court should not have entered summary judgment for Spotify and HFA.

I.      The district court correctly found, as a matter of law, that Eight Mile had established all elements of a *prima facie* case of copyright infringement. Its decision to nonetheless deny Eight Mile's motion for summary judgment on the ground of equitable estoppel rested on multiple errors of law and fact. The district

---

[5] The district court's order also addressed Kobalt's obligation to indemnify Spotify and HFA. That portion of the court's order is interlocutory and has not been certified under Rule 54 for appeal.

court should not have even considered this defense for two reasons. It was not raised by Spotify or HFA in opposition to Eight Mile's motion, which constitutes a waiver. And a party may only invoke this equitable defense if it comes to court with clean hands—but the undisputed facts found by the district court itself showed that Spotify (and its agent HFA) lacked clean hands. Spotify engaged in massive knowing infringement from launch, and attempted to cover up that infringement by directing HFA to issue illegitimate, improperly backdated NOIs, which HFA did. This conduct was the very opposite of good faith and clean hands.

Spotify and HFA's bad faith aside, they cannot establish equitable estoppel as a matter of law. The district court failed to apply a controlling Supreme Court decision limiting the defense to instances of affirmative misrepresentation concerning a plaintiff's abstention from suit. It is undisputed that Eight Mile made no such misrepresentations.

Even under the incorrect test applied by the district court, the undisputed evidence compelled a rejection of any equitable estoppel defense. No record evidence supported a conclusion that Eight Mile even knew, until shortly before it filed suit, that Spotify was illegally streaming its compositions without a license. The record contained no evidence that Eight Mile engaged in any conduct intended to deceive Spotify. The district court's contrary finding, which depended on the theory that Eight Mile intentionally waited to bring suit until *after* a law had been

21

passed potentially limiting its damages, rested on speculation entirely divorced from any record evidence and from common sense. The record also contained no evidence that Spotify engaged in infringement in reasonable reliance on any misrepresentation or conduct by Eight Mile—given that Spotify began infringing in 2011 and given that the district court found that its entire *modus operandi* was to stream millions of compositions without ever procuring the requisite licenses. Indeed, the district court never even addressed reasonable reliance, which is a foundational requirement of equitable estoppel. And if this Court reverses the denial of summary judgment as to Spotify, HFA is liable as a contributory infringer.

II.    At a minimum, the district court should not have granted the summary judgment motions of Spotify and HFA. In resolving a number of factual and credibility disputes against Eight Mile—including disbelieving Eight Mile's testimony regarding when it learned of the infringement, and hypothesizing a motive for delay that was not based on any record evidence or testimony at all—the district court usurped the role of the jury. Moreover, the equitable estoppel issue turned in part on Spotify's knowledge, and the court bifurcated discovery regarding willfulness until a second phase of the case.

## STANDARD OF REVIEW

Eight Mile appeals from the district court's grant of Spotify and HFA's motions for summary judgment and denial of Eight Mile's motion for summary

judgment. This Court reviews those decisions *de novo*. *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441-42 (6th Cir. 2021). This Court is tasked with "'evaluat[ing] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Id*. at 442 (quoting *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019)).

## ARGUMENT

### I.    Eight Mile Was Entitled To Summary Judgment On Liability

#### A.    The District Court Correctly Found that Eight Mile Established Prima Facie Copyright Infringement As a Matter of Law

Establishing copyright infringement involves two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007). Copyright infringement is a strict liability tort. *Bridgeport Music, Inc. v. 11C Music*, 154 F. Supp. 2d 1330, 1335 (M.D. Tenn. 2001). There was no material dispute that Eight Mile owned valid copyrights in the compositions, and that Spotify streamed them.

Existence of a license, of course, is a defense to copyright infringement. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2nd Cir. 1995). Spotify asserted many different and somewhat inconsistent theories of the existence of a license. The

district court correctly concluded that Spotify had no *express* license to stream the compositions. Agreements between Kobalt, Eight Mile, and Bridgeport made clear that the sole entity with domestic licensing authority for the relevant period was Bridgeport. Order, RE.704, PageID#64262-64. The court, accordingly, correctly held as a matter of law that a 2016 blanket mechanical license agreement between Kobalt and Spotify could not include the EMS Compositions. *Gilliam v. ABC*, 538 F.2d 14, 21 (2d Cir. 1976) ("[A] grantor may not convey greater rights than it owns.").[6] Likewise, Spotify did not acquire an express license in connection with the National Music Publishers Association Settlement Agreement, through dealings with Sony/ATV, through licensing agreements, or via the compulsory license process. Order, RE.704, PageID#64263-65.

The district court also correctly concluded, as a matter of law, that Spotify did not have an *implied* license to stream the EMS Compositions. Order, RE.704, PageID#64265-68. In this Circuit, the *sine qua non* of an implied license is the intent of the licensor. *Murphy v. Lazarev*, 589 F. App'x 757, 765 (6th Cir. 2014); *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998) ("Without intent, there can be no implied

---

[6] In some instances, Spotify argued that it had received a license from a co-publisher. But for 32 of the EMS Compositions (including *Lose Yourself*) there is no co-publisher. Catlett Opp. Decl., RE.671-25, PageID#61657-58. As for the rest, Spotify itself admitted, "custom and practice in the music industry has developed such that each co-author of a musical work only licenses its proportionate share in the underlying work." Spotify's 2014 Comments to the Copyright Office, RE.674-4, PageID#61814.

24

license."). The record is devoid of any evidence that Eight Mile intended to grant an implied license to Spotify. Eight Mile's acceptance of royalties is not sufficient to create an implied license as a matter of law. *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022). In any event, royalties for all world-wide uses of the EMS Compositions flowed through Kobalt and were paid to Eight Mile via a single quarterly wire with thousands of line-items from hundreds of payors. Eight Mile's Response to Spotify's SUMF, RE.669, PageID#60732-33. Those wire transfers cannot support a finding that Eight Mile intended to grant a license to Spotify.

As the district court concluded, "Spotify lacked any valid license—compulsory or negotiated, express or implied—to include recordings of the Eight Mile Style Works in its streaming catalog, but it did so anyway." Order, RE.704, PageID#64268. Eight Mile "is entitled to summary judgment unless Spotify can avail itself of some valid affirmative defense." *Id.*

## B. Spotify's Equitable Estoppel Defense Fails as a Matter of Law

The sole reason the district court offered for denying Eight Mile's summary judgment motion (and granting Spotify's and HFA's motions) was that equitable estoppel barred this lawsuit. That decision was wrong for at least four reasons. First, Spotify and HFA never argued equitable estoppel as a defense to Eight Mile's motion. Second, Spotify's unclean hands bar application of equitable estoppel as a matter of law. Third, the district court applied the wrong test, and the correct test for

equitable estoppel is not even arguably satisfied here. Fourth, even under the test the district court applied, no reasonable factfinder could find that the elements of equitable estoppel are satisfied.

### 1.     Spotify Failed to Raise Equitable Estoppel.

Although Spotify's own motion for summary judgment contained a cursory, two-paragraph section on equitable estoppel, Motion, RE.553, PageID#42218, Spotify did not raise equitable estoppel as a defense in response to Eight Mile's motion for summary judgment. Opposition, RE.556, PageID#42278-365. HFA did not raise equitable estoppel at all. It was inappropriate for the district court to deny Eight Mile's motion on the basis of an argument that neither defendant raised in opposition. *See Cent. Illinois Pub. Serv. Co. v. Atlas Mins., Inc.*, 146 F.3d 448, 452 (7th Cir. 1998).

### 2.     Spotify and HFA's Unclean Hands Bar Application of Equitable Estoppel.

Under this Court's precedent, "a party claiming the benefit of an equitable estoppel must have proceeded with the utmost good faith." *Elvis Presley Enters.*, 936 F.2d at 895. "Estoppel is an equitable doctrine," and "'he who comes into equity must come with clean hands,' and thus 'the doors of equity' are closed 'to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the' other party." *United States v. Perez-Torres*, 15 F.3d 403, 407 (5th Cir. 1994) (quoting *Heckler v. Cmty. Health*

26

*Servs. of Crawford*, 467 U.S. 51 (1984), and *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945)).

In *Elvis Presley*, for example, this Court held that a defendant could not rely on equitable estoppel as a defense to a trademark infringement lawsuit because he "continued to sell [the infringing] merchandise after receiving [the plaintiff's] cease and desist letter and after having unsuccessfully sought a license." 936 F.2d at 895. That "conduct demonstrates an absence of the utmost good faith necessary to establish an equitable estoppel defense," and warranted summary judgment for the plaintiff on that defense. *Id.*

As the undisputed facts show, Spotify did not exhibit the "utmost good faith." The district court found that, from launch, Spotify had intentionally adopted a licensing approach under which it "could never know, for sure, whether it had the rights to *any* work" absent an express license or a timely NOI. Order, RE.704, PageID#64280. As a consequence, it committed *billions* of acts of infringement, while also taking steps to obfuscate and cover up its intentional infringement. These acts include directing HFA to serve backdated, "facially ineffective NOIs" that "served no legitimate purpose," followed by sending purported mechanical royalty payments and statements that had no basis in underlying mechanical licenses, rendered to give the appearance of legitimacy.

HFA's own expert witness, Mr. Levy, conceded that those royalty statements were invalid if the underlying licenses were invalid. Mr. Levy further opined that such payments could mislead publishers into believing mechanical licenses were in place from whatever source. Levy Depo., RE.665-12, PageID#60142. And Spotify worked with HFA to send backdated, ineffective NOIs throughout the entire period, starting in 2011 and continuing through 2019 *after* Eight Mile had reached out to HFA about the absence of valid licenses—after which Spotify, through HFA, sent more falsely backdated NOIs to Eight Mile directly. *See, e.g.,* NOIs, RE.659-16, PageID#58484-561.

Spotify has contended that it reasonably thought it had a license because it believed that Eight Mile's royalty collector, Kobalt, had licensing authority. But as the district court found, regardless of whether Spotify had reason to believe that Kobalt had licensing authority, Spotify knew that Kobalt had not given Spotify a license, and streamed anyway. Order, RE.704, PageID#64263-64. "Spotify has failed to identify a single employee or ex-employee who would testify that he or she understood the 2016 BMLA [i.e., Spotify's agreement with Kobalt] to include the EMS Compositions," and in any event Spotify was streaming the compositions *before* that agreement. *Id*. Spotify acted this way because, as its expert testified, it wouldn't be "commercially viable" if it followed the law and only streamed with a proper license. *Id.* at PageID#64260.

These facts preclude equitable estoppel as a matter of law. Spotify did not act with the "utmost good faith" when it undisputedly directed HFA to send backdated NOIs with no "legitimate purpose." Notably, it "continued to" send these backdated NOIs and to infringe after this suit was filed—actions indistinguishable from the conduct that precluded invocation of equitable estoppel in *Elvis Presley*, 936 F.2d at 895. Indeed, the mere fact that Spotify engaged in willful infringement precludes equitable estoppel. *TWM Mfg.*, 592 F.2d at 349 (reversing grant of summary judgment on equitable estoppel where defendant engaged in "deliberate, calculated plagiarism" of patented works); *Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 1994 WL 471414, at *2 (C.D. Cal. Mar. 3, 1994) (gathering sources, finding equitable estoppel inapplicable to instances of willful patent infringement).

Spotify's efforts to conceal and deceive rights holders, including Eight Mile, by relying on HFA's reputation, backdated NOIs, and fake royalty accountings preclude it from obtaining relief based on equitable estoppel.

**3.    Spotify Cannot Satisfy *Petrella*'s Equitable Estoppel Test**

Even if equitable estoppel were not waived or precluded by Spotify's own misconduct, the district court applied the wrong legal test for equitable estoppel, and Spotify cannot satisfy the correct one.

In *Petrella*, the Supreme Court held that equitable estoppel was an available defense to copyright infringement claims, but that an "exacting" standard applied:

the defendant must establish that the "copyright owner engage[d] in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relie[d] on the copyright owner's deception." 572 U.S. at 684. Because "estoppel … rests on misleading" rather than delay, the Court held, applying estoppel to bar a copyright claim does not override Congress's three-year statute of limitations. *Id.* at 685. Allowing a defense of laches or unfair delay, by contrast, would undermine the three-year statute of limitations. *Id.*

The Supreme Court accordingly held that a plaintiff who waited *seven* years after securing copyrights relating to the film *Raging Bull* to notify MGM of her rights, and then waited an additional *nine years* to file suit, could bring a claim for infringing acts occurring within the three years prior to the suit. *Petrella*, 572 U.S. at 674. That was so regardless of the copyright owner's motivation for waiting—the Court held that no equitable principle prevents a copyright owner from waiting to gauge the effect of the infringement on the copyrighted work or simply until the damages are large enough to justify the cost of litigation. *Id.* at 682.

This Court's own precedent is consistent with *Petrella*. This Court has explained that "[t]he traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Mich. Express, Inc. v. United States*, 374 F.3d 424,

30

427 (6th Cir. 2004). "To work an estoppel, defendant must normally show, in addition to laches, that he was misled in some fashion by the plaintiff." *TWM Mfg.*, 592 F.2d at 350. Many other courts have held that equitable estoppel does not apply where the exacting misrepresentation standard has not been met.[7]

But the district court did not apply the *Petrella* test and did not require Spotify to establish that Eight Mile engaged in "intentionally misleading representations concerning [its] abstention from suit." 572 U.S. at 684. Instead, the district court applied an out-of-circuit pre-*Petrella* test that contained no misrepresentation requirement at all. Order, RE.704, PageID#64270 (quoting *Carson v. Dynegy, Inc.*, 344 F.3d 446, 453 (5th Cir. 2003)). The district court did not identify any "representations" by anyone at Eight Mile to anyone at Spotify at all, much less representations intentionally aimed at misleading Spotify into thinking Eight Mile would not file suit (there are none).

---

[7] *See, e.g.*, *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-cv-42, 2019 WL 4647305, at *5 (S.D. Ohio Sept. 24, 2019) (declining to apply equitable estoppel at summary judgment, finding: "There is no evidence that [defendant] was reasonably and justifiably mislead into believing that [plaintiff] would not pursue a claim for copyright infringement"); *Spanski Enters. v. Telewizja Polska S.A.*, 222 F. Supp. 3d 95, 112-13 (D.D.C. 2016) (declining to apply equitable estoppel, citing *Petrella*, because the infringer could not have detrimentally relied on the plaintiff as it was the party intentionally harming the plaintiff); *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1115 (C.D. Cal. 2010) (equitable estoppel disfavored) (citing *Richardson v. City of Boston*, 60 U.S. 263, 267 (1856)).

The district court did conclude that Eight Mile could not produce a "valid business reason" for its perceived abstention from suit, and accused Eight Mile of lying in wait until *after* the passage of the MMA to file suit to force a larger settlement. Order, RE.704, PageID#64275. For reasons explained *infra*, there was no record evidence to support the court's findings, which instead relied on speculation and improper credibility determinations. Even if there were, *Petrella* prohibits barring a suit on those grounds. 572 U.S. at 682-83 (rejecting the argument that delay intended for the economic benefit of the copyright owner can bar suit).

The record contains no evidence of any intentional misrepresentation concerning Eight Mile's abstention from suit. Under *Petrella*, the district court was required to grant summary judgment to Eight Mile on the issue of equitable estoppel, and thus—in light of the court's other findings—on the issue of liability as a whole.

### 4.    Equitable Estoppel is Not Available Here Under Any Test

Rather than relying on the *Petrella* test, or even a pre-*Petrella* test from *this Circuit*, the district court applied a four-part equitable estoppel test drawn from the Fifth Circuit. Order, RE.704, PageID#64270 (citing *Carson*, 344 F.3d at 453 ). That was error. Under this Court's precedent, "[t]he traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Mich. Express*, 374 F.3d at 427. This

Court "grant[s] equitable estoppel *only if* [the asserting party] can demonstrate" the *Michigan Express* elements. *Townsend v. Rockwell Automation, Inc.*, 852 F. App'x 1011, 1013 (6th Cir. 2021) (emphasis added). And this Court has cautioned that,

> **For silence to work an estoppel, some evidence must exist to justify an inference that the silence was sufficiently misleading to amount to "bad faith." …** The lower court based its finding of estoppel on the fact that plaintiff had not objected to the alleged infringement for a substantial period of time…. This is an inadequate basis for a finding of estoppel, since, as we have stated, **estoppel requires more than mere silence. The record does not disclose, and the district court does not point to, any misrepresentations, affirmative acts of misconduct, or intentionally misleading silence by the plaintiff. Such findings are necessary in order to establish an estoppel.**

*TWM Mfg.*, 592 F.2d at 350 (emphases added).

In other words, even if *Petrella* did not require a misleading representation concerning abstention from suit (though it does), here there were no misleading misrepresentations (about any subject) or misconduct at all. Nor was there any evidence of any "intentionally misleading silence" on which defendants reasonably relied to their detriment. The district court's finding of equitable estoppel under the four *Carson* factors relied on the very rationale—that delay alone can support equitable estoppel—that *Petrella* and *TWM Manufacturing* rejected.

### a.    There is No Evidence that Eight Mile Knew the Facts of Spotify's Infringement Before 2018

Relying on Fifth Circuit precedent, the district court first considered whether "(1) the plaintiff … kn[e]w the facts of the defendant's infringing conduct." Order,

RE.704, PageID#64270 (citing *Carson*, 344 F.3d at 453).  Mr. Martin testified that, while Eight Mile  knew that Spotify was streaming the EMS Compositions since its U.S. launch, Eight Mile was unaware that such use was infringing (*i.e.*, *unlicensed*) until Eight Mile first suspected it in July 2018, initiated an audit, and confirmed in 2019 that Spotify lacked the requisite licenses. Martin Decl., RE.659-2, PageID#58371; Martin Depo., RE.670-15, PageID#61159.

Prior to that time—and because it was receiving royalty payments at the statutory rate from Spotify's agent HFA—Eight Mile was under the misapprehension that Spotify had obtained the requisite license from UMG and/or by following the proper process to obtain a compulsory license.  Martin Decl., RE.659-2, PageID#58371.  As soon as Mr. Martin learned that UMG had not issued a pass-through license, he asked his counsel, Mr. Levinsohn, to contact HFA to get to the bottom of things. Levinsohn Email, RE.663-7, PageID#59495-96.  Those conversations lasted over several months into 2019.  2018-2019 Levinsohn Emails, RE. 666-10, PageID#60293-301 (unredacted at RE.366-3, pp.1-10). This lawsuit was initiated almost immediately thereafter in August 2019. Complaint, RE.1, PageID#1.

Rejecting this evidence, the district court instead found as a matter of law that Eight Mile was aware of infringement by Spotify as early as 2016.  This conclusion was based on a misunderstanding of a statement by Mr. Martin in his deposition that

"at or around 2016… Spotify would have the obligation to come to us for a license…" Martin Depo., RE.619-8, PageID#49744. Mr. Martin was explaining the approximate time that he expected UMG or Spotify to approach him about *renewing* any previously-issued pass-through license. Martin Decl., RE.659-2, PageID#58371. He did not state that he believed Spotify had no license as of that time, and there was no such evidence in the record.

Indeed, Mr. Martin also testified that, based on the royalty payments continuing throughout the entire period, he understood Spotify might have obtained a compulsory license, a process that largely operates on the honor system. *Id.* It can be difficult for a licensor to know whether an NOI was timely submitted and otherwise complied with the requirements. As HFA itself said in comments filed with the Copyright Office in 2014:

> The Section 115 compulsory license provisions of the Copyright Act create **an honor system for licensing in which compulsory licensees self-license, self-report and self-assess**. As a result, the information reported on the Statements of Account is the only mechanism for copyright owners to adequately understand the usage and payment for their works. At no point are songwriters or music publishers allowed to directly evaluate the reporting and payment made by the compulsory licensee. As a result, **songwriters and publishers never have the opportunity to confirm that they are being paid correctly.**[8]

---

[8] Comments of the National Music Publishers' Association, Inc. and The Harry Fox Agency, Inc. in Response to Copyright Office Notice of Inquiry dated March 17, 2014, 79 Fed. Reg. 14739-02 (emphasis added).

Thus, a copyright holder may not know whether the receipt of royalties at the statutory rate reflects a compulsory license properly obtained or—as was the case here— an attempt by the licensee to pretend it had such a license when it did not.

Eight Mile's misapprehension that Spotify had obtained a valid compulsory license would have been reinforced by HFA's conduct.  HFA sent out royalty payments showing the exact royalty that would have been paid if there were a proper compulsory license.  Indeed, the district court acknowledged that a small music publishing house could mistakenly assume that mechanical royalty payments from HFA—with its reputation for being a champion of publisher rights—meant that the compositions were duly licensed (even though they were not).  Order, RE.704, PageID#64280. As even HFA's own expert admitted in deposition testimony, it is "certainly possible" that a music publisher could be misled into believing a valid mechanical license was in place when receiving mechanical royalties from HFA. Levy Depo., RE.665-12, PageID#60137-38, 60140, 60142.  The district court discounted this on the ground that Eight Mile's catalog was valuable—but Eight Mile has only two employees.  The court's assumption that it had to have known that the royalties were invalid was based on a chain of speculation and inference, not record evidence.  Order, RE.704, PageID#64274.

### b. There is No Record Evidence that Eight Mile Intended its Conduct to Be Relied on To Spotify's Detriment

Even if Eight Mile had known of infringement in 2016, the estoppel defense would still fail as a matter of law. "[E]stoppel requires more than mere silence." *TWM Mfg.*, 592 F.2d at 350. Here, that is all there was. The record contains no evidence of a representation or conduct by Eight Mile indicating to Spotify that it intended to abstain from suit, much less any evidence suggesting that Eight Mile specifically intended its silence to be relied upon by Spotify to its detriment. Even if *Petrella* did not require a specific misrepresentation related to abstention from suit (which it does), Spotify identified no record evidence that could establish misleading statements or conduct under any formulation of the equitable estoppel test.

In violation of *Petrella* and this Court's cases, the district court nonetheless held that silence and delay alone established equitable estoppel—and thus precluded summary judgment for Eight Mile—unless Eight Mile "justified" its purported "delay." And then, without citing any record evidence at all, the district court engaged in a long chain of speculation to hypothesize an improper purpose for Eight Mile's purported delay, which it relied on to find equitable estoppel.

### i. Requiring a "Valid Business Reason" for Tolerating Infringement Would Eviscerate Petrella

In a section of its opinion entitled "Eight Mile's Intent and Culpable Action," the district court held that Eight Mile could only avoid estoppel if it "identified a[]

37

valid business reason for tolerating Spotify's infringement." Order, RE.704, PageID#64275. This was factually and legally erroneous.

Neither *Petrella*, *Michigan Express*, nor any other binding authority requires a copyright plaintiff to show a "valid business reason" for a purported delay in filing suit to avoid the application of equitable estoppel. To the contrary, "[e]stoppel is an affirmative defense and the burden of proof is on the person asserting it"—Spotify. *Crosley Corp. v. United States*, 229 F.2d 376, 381 (6th Cir. 1956). To defeat summary judgment, Spotify had to identify record evidence establishing intentional misconduct. But the *only* record evidence the district court cited in this entire section was a document indicating that Eight Mile had brought copyright lawsuits before and was anticipating a financial settlement at one point in 2012. Order, RE.704, PageID#64276. If that were sufficient, every copyright owner would be equitably barred from suit.

More important, if the absence of a "valid business reason" for delay were sufficient to establish estoppel, *Petrella* would have come out the other way. In *Petrella*, the plaintiff waited 16 years to sue because she was seeking infringers' profits, 572 U.S. at 669, and wanted to see whether Raging Bull "made money," *id.* at 682. The Supreme Court held that there was "nothing untoward" about her conduct. *Id.* The district court's theory that Eight Mile is equitably estopped if it delayed in hopes of increasing an economic recovery rather than for some

purportedly "valid business reason," Order, RE.704, PageID#64274-75, would eviscerate *Petrella*—every laches case would satisfy equitable estoppel.

Elsewhere, the district court acknowledged as much, correctly noting that, "[e]ven when a party knowingly and intentionally sleeps on its rights, the court cannot simply assume an improper intent for the purposes of estoppel." *Id.* But that is what the court did. It found equitable estoppel based on an alleged "substantial period of delay" that was at most one-third as long as the delay that was *insufficient* in *Petrella*. *Id.* at PageID#64280-81.

> ii.    *The District Court's Theory of "Opportunistic" Litigation Defies Common Sense*

There was no evidence in the record to support the district court's conclusion that Eight Mile in fact delayed bringing suit out of a "desire to maximize its eventual remedies against Spotify." Order, RE.704, PageID#64276. The district court admitted that "there is no direct evidence" to support such a conclusion, but opined that it was "the only option that makes sense." *Id*. To the contrary, it made no sense.

To begin with, Eight Mile's admission that it had previously "initiated copyright infringement actions approximately eight to ten times" did not suggest strategic delay.[9] Order, RE.704, PageID#64276. The court cited no evidence that

---

[9] Indeed, in the case relied upon by the district court, *Freeplay Music*, the court *declined* to apply equitable estoppel or declare the plaintiff a "copyright troll" even though it had engaged in over *forty* copyright litigations. *Freeplay Music*, 2019 WL 4647305, at *13-15.

Eight Mile had delayed bringing those actions for any profit maximization purpose; they simply established that Eight Mile diligently protects its catalog and the highly valuable royalty assets of its songwriters.

Further, if it were true that Eight Mile entertained a desire to maximize potential remedies, the last thing it would have done is delay filing suit. If Eight Mile knew Spotify lacked licenses in 2016 (which it did not) then its incentive would be to file suit as soon as possible to toll the three-year statute of limitations earlier, thereby *increasing* potential damages. Had Eight Mile sued in 2016, it would have had three years of retrospective damages back to 2013; because it sued in 2019, it has three years of retrospective damages starting in 2016. The district court did not explain why the latter would be more advantageous and there is no evidence that it was.

Moreover, as the district court acknowledged, Eight Mile filed its suit *after* January 1, 2018, when the Music Modernization Act's limitation on liability came into effect. Order, RE.704, PageID#64276. That fact is irreconcilable with the district court's narrative: as the court acknowledged, a pre-MMA suit would have had a "good chance" of resulting in "massive damages," and Eight Mile had a "reduced chance of receiving those full damages" because it sued post-MMA. *Id*. That undisputed fact should have ended any suggestion that Eight Mile engaged in intentionally misleading conduct under any standard, and should have resulted in

summary judgment for Eight Mile. That fact also undermines the district court's theory that Eight Mile knew of the infringement before 2018.

The district court then opined—citing no evidence at all—that Eight Mile's purported delay could have been part of a calculated plan to challenge the constitutionality of the MMA's limitation on liability, speculating that a successful challenge "could, potentially, justify a more generous settlement" from Spotify. *Id*.

This reasoning makes little sense. How would trading a lawsuit that was likely to result in "massive damages" for a lawsuit where those damages might be barred unless a court declared a statute unconstitutional justify a *more* generous settlement? The court's suggestion that Spotify, a $93-billion-dollar public company, would be afraid because Eight Mile is "likely to be the most well-funded, well-positioned party" to challenge the MMA's constitutionality was speculative at best. *Id*. (citing no evidence to suggest that Eight Mile would be any more well-funded or positioned than any other copyright owner).

The court's theory also endows Mr. Martin with rather exceptional foresight. The district court seems to have believed that Mr. Martin could have predicted in 2016 (1) that the MMA would actually be passed; (2) that the terms of the MMA would ultimately include a retroactive limitation on liability (thus creating the opportunity for constitutional challenge); (3) that Spotify would so fear such a challenge that it would open its purse strings; and (4) that the benefit from leveraging

41

that fear would outweigh the claims and damages Eight Mile might lose by not filing earlier to toll the three-year statute of limitations.

"[S]peculation" is "not enough to defeat summary judgment." *Walden v. Gen. Elec. Int'l, Inc*, 119 F.4th 1049, 1059 (6th Cir. 2024). The district court's speculation does not create a triable issue of fact on the question whether Eight Mile had any sort of culpable intent sufficient to trigger equitable estoppel, and the court should have granted summary judgment to Eight Mile. It certainly should not have granted summary judgment *against* Eight Mile.

### c.    Spotify Was Not Ignorant of the True Facts and Did Not Rely on Eight Mile's Conduct to its Detriment

Eight Mile would be entitled to summary judgment even if Spotify had presented evidence of misrepresentation (which it did not). Under any formulation of the estoppel test, Spotify was also required to adduce evidence that could support a finding of "reasonable reliance *on the misrepresentation*," resulting in "detriment" to Spotify. *Mich. Express,* 374 F.3d at 427 (emphasis added); *TWM Mfg.*, 592 F.2d at 350 (estoppel "arises only when one has so acted as to mislead another and the one thus misled had relied upon the action of the inducing party to his prejudice").

The district court never even analyzed this factor. Its opinion includes a section entitled "Spotify's Knowledge," in which the court concludes that Spotify knew it was infringing many compositions but might not know it was specifically infringing the EMS Compositions. Order, RE.704, PageID#64278-80. And its

42

opinion includes a section entitled "Injury to Spotify" that suggests that the parties could have reached a licensing deal. *Id*. But neither of these sections conclude that there was *any* evidence, much less undisputed evidence, that Spotify engaged in infringing conduct *in reliance* on Eight Mile's alleged failure to alert it to infringement. That failure at minimum requires reversal of the entry of summary judgment.

Moreover, because no reasonable jury could find reasonable reliance on this record, Eight Mile is entitled to summary judgment based on this element of equitable estoppel too. Undisputed facts preclude the conclusion that Spotify relied on any conduct of Eight Mile's to its detriment. Spotify's policy from the very beginning was to stream musical works whether it had a license or not.  Order, RE.704, PageID#64240-41, 64280. HFA's own general counsel admitted that Spotify told HFA to "generate and send NOIs years after the first distribution"—*i.e.*, to improperly backdate the NOIs—as early as 2011, when Spotify first hired HFA. Smith Depo., RE.659-10, PageID#58436-37, 101:17-102:8. In other words, Spotify did not infringe Eight Mile's copyrights in "reasonable reliance" on any failure of Eight Mile to send it some sort of notice in 2016 or 2018 (the dates when the district court suggested Eight Mile became aware of infringement). Spotify has been infringing Eight Mile's copyrights since its launch.  Order, RE.704, PageID#64240-41, 64243.

Spotify's subsequent approach to licensing also confirms it could not have been reasonably relying on any silence by Eight Mile. As the court found, Spotify's entire business relied on streaming without regard to whether it had a license. "By all accounts, [Spotify] was in the practice of licensing catalogs without knowing, with any specificity, what was in them." Order, RE.704, PageID#64278. Spotify also knew that HFA was not up to the task of licensing at scale (New Yorker Article, RE.663-16, PageID#59542-49; Kohn Report, RE.654-4, PageID#56782-94, (unredacted at RE.355-2, pp.120-31)) and had already paid hundreds of millions of dollars to settle similar claims of infringement (*id.* at PageID#56802-03). Then, in the drafting and negotiation of the blanket license agreements stemming from these settlements, it did *no due diligence* to determine their scope. Bridgwood Depo. Vol. I, RE.585-1, PageID#43866-68, 43873-74; Bridgwood Depo. Vol. II, RE.585-2, PageID#43902. Yet, it *continued* to rely solely[10] on HFA for its licensing needs.

The district court found that Spotify intentionally set up a scheme in which it "could never know, for sure, whether it had the rights to any work for which it had not either (1) obtained an express voluntary license specifically enumerating the work or (2) filed a timely NOI—an option that became impossible the moment that Spotify first streamed the track at issue." Order, RE.704, PageID#64280.

---

[10] The lone exception being the aforementioned eNOIs which Spotify sent to the Copyright Office, which were insufficient to license the EMS Compositions.

Thus, Spotify knew perfectly well that it had no licenses for untold numbers of songs but streamed anyway. Accordingly, it is impossible to find that Spotify *relied* on Eight Mile's purported failure to advise Spotify that it didn't have a license. Spotify's actions indicate that it did not *care* whether it was licensed because it was ultimately in its business interests to violate copyrights.

The district court discounted all of this on the odd theory that, while Spotify knew it was violating copyrights, it might not have known specifically that it was violating Eight Mile's copyrights. *Id*. It is entirely improper to find equitable estoppel in these circumstances. The district court effectively held that Spotify, a multi-billion-dollar company, bore no responsibility whatsoever for its decision to stream without authorization for years and to engage a licensing agent that was not capable of doing its job, and that it was "reasonable" for Spotify to instead "rely" on an alleged failure of a copyright owner to notify Spotify of the absence of a license. This is the opposite of equitable.

Moreover, even *if* Spotify did not know that it was infringing Eight Mile's copyrights, the fact that Spotify undisputedly did not care whether it was infringing *anyone*'s copyrights precludes, as a matter of law, any finding that it actually relied in any way on Eight Mile's alleged failure to send a notification.

Regardless, undisputed facts establish that Spotify knew that it lacked a license, which precludes the conclusion that Spotify was "ignorant" that it was

infringing Eight Mile's copyrights. Many of the EMS Compositions, including the bellwether song, *Lose Yourself*, were placed in "copyright control" in HFA's database – an indication that HFA did not have the right to license the composition. Caternor Depo., RE.666-2, PageID#60249-56. HFA and Spotify routinely interchanged licensing requests and responses (Request Files and Response Files, respectively). Smith Depo., RE.659-10, PageID#58428-29, 58436, 58446 (unredacted at RE.360-3, pp.4-5,12,22, 48:14-50:18; 130:10-19; 203:6-204:5). The Response Files HFA remitted to Spotify indicated that those EMS Compositions in "copyright control" were not able to be licensed. *Id.*  Mr. Smith, HFA's general counsel, testified that HFA directly informed Spotify that it could not provide a license for the EMS Compositions. *Id.* at PageID#58442 ("In the response files, yes").

The district court concluded that, even though Kobalt told HFA three times that it couldn't license the EMS Compositions and HFA passed that on to Spotify, that wasn't good enough because "[n]one of the cited communications actually told HFA that Spotify lacked a license." Order, RE.704, PageID#64279. But there were no communications to Eight Mile that told Eight Mile that Spotify lacked a license for the EMS Compositions—and yet the district court found earlier in its opinion that the undisputed facts showed that Eight Mile had knowledge Spotify was unlicensed.

46

It is impossible to reconcile these two aspects of the district court's opinion. On one hand, the court found that Eight Mile's Martin knew of the infringement because he should have realized that a (hypothetical) pass-through license from UMG had expired once no one came to ask him to renew it—even though he was never told that had expired and there were many other ways of obtaining a valid license, such as compulsory NOIs. On the other, the court found that, on the undisputed facts, Spotify did not know of the lack of a license even though it *was* specifically told that HFA lacked licensing power, because perhaps Spotify thought the "relevant compositions were covered by some non-Kobalt license." *Id*.

The district court alternatively found that Spotify was injured because "Eight Mile Style's wait-and-sue strategy … effectively took [the] option off the table" of negotiating a voluntary license. Order, RE.704, PageID#64280-81. That is both contrary to the record and legally insufficient. The question for estoppel is "whether the copyright owner's conduct led the alleged infringer to reasonably believe that the copyright owner did not intend to enforce their rights," *Oppenheimer v. Scarafile*, 2022 WL 2704875, at *2 (D.S.C. July 12, 2022)—not whether the copyright owner complicated the prospect of negotiations. In any case, a copyright owner is not required to offer a license. *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932) ("The owner of the copyright, if he pleases, may refrain from vending or licensing and

content himself with simply exercising the right to exclude others from using his property."); 1 *Nimmer on Copyright* §A.05 (2024).

### C. Eight Mile Was Entitled to Summary Judgment Against HFA

The district court's analysis of Eight Mile's claims of contributory infringement against HFA are sparse. Rather than weigh HFA's contributions to Spotify's infringement, the court merely found that estoppel likewise precluded claims against HFA. Order, RE.704, PageID#64283-84. But HFA never even raised equitable estoppel, either in its own summary judgment motion or its opposition to Eight Mile's. That alone precludes the district court from denying Eight Mile's summary judgment motion (or granting HFA's) on this ground.

Contributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another. *Bridgeport v. WB Music*, 508 F.3d at 398. Contributory infringement exists when a party, "with knowledge of the infringing activity, induces, causes, *or materially contributes* to the infringing conduct of another." *NCR Corp. v. Korala Assocs., Ltd.,* 512 F.3d 807, 816 (6th Cir. 2008) (quoting *Bridgeport v. WB Music*, 508 F.3d at 398) (emphasis omitted and added).

The district court correctly concluded that HFA and Spotify were acting "in concert" to aid in Spotify's infringing conduct of streaming the EMS Compositions without a license. Furthermore, the undisputed record demonstrates that HFA was

knowingly issuing untimely NOIs and royalty payments as if there were valid compulsory licenses in place. This alone is grounds to find contributory infringement. *Grokster*, 545 U.S. at 932 (2005) (Where a defendant distributes an article that is "'good for nothing else' but infringement … there is no injustice in presuming or imputing an intent to infringe."); *UMG Recordings, Inc. v. Mahakkapong*, No. 14-cv-07229, 2015 WL 12803768, at *3 (C.D. Cal. Feb. 9, 2015) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)) (offering "material support services" to infringing activities sufficient to find contributory infringement).

## II.   At Minimum, Disputed Facts Precluded Entry of Summary Judgment Against Eight Mile

Even if the Court concludes that Eight Mile is not entitled to summary judgment on the issue of equitable estoppel, at minimum it should reverse the district court's order granting summary judgment to Spotify and HFA.

The district court resolved numerous disputed facts against Eight Mile and failed to "view the facts and any inferences reasonably drawn from them in the light most favorable to" Eight Mile, as it was required to do before granting summary judgment to Spotify and HFA. *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005). This is reversable error. *Id.*; *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("the standards upon which the

49

court evaluates the motions for summary judgment do not change simply because the parties present cross-motions.").

### A. The District Court Resolved Factual Disputes and Drew Improper Inferences Against Eight Mile

"'Equitable estoppel is a mixed question of law and fact and must be submitted to the jury when an evidentiary dispute exists regarding its application.'" *Fitzgerald Truck Parts & Sales, LLC v. United States*, 671 F. Supp. 3d 839, 848 (M.D. Tenn. 2023) (quoting *Berhad v. Advanced Polymer Coatings, Inc.*, 652 F. App'x 316, 325 (6th Cir. 2016)). "In other words, '[w]here an allegation of estoppel raises factual questions on which reasonable minds might disagree, the questions must be resolved at trial by the trier of fact,' but 'where the facts are not in dispute or are beyond dispute, the existence of estoppel is a question of law.'" *Id.* (quoting *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1493 (6th Cir. 1991)).

Because equitable estoppel is an affirmative defense, Spotify and HFA needed to adduce record evidence from which a reasonable jury could find that *each* of its elements were satisfied to avoid summary judgment against them. As explained above, they have failed to do that. Among other things, no reasonable jury could find that they acted in "utmost good faith," and no reasonable jury could find that Eight Mile engaged in any intentionally misleading misrepresentation concerning its

50

abstention from suit when it made no representations about any suit to Spotify or HFA at all.

By contrast, if *any* element of equitable estoppel raises disputed questions of fact or disputed credibility questions, this Court must reverse the decision below. The district court's analysis of multiple elements of equitable estoppel necessarily inferred intent and state of mind, made credibility determinations, and improperly weighed disputed evidence regarding Joel Martin's and Eight Mile's actions.

First, even if the Court does not conclude as a matter of law that Spotify and HFA failed to act in utmost good faith, at minimum there is sufficient evidence to create a jury question on that issue. *See supra* at §I.B.2.

Second, at minimum there are jury questions on whether Eight Mile knew of infringement and whether, if so, its "silence" was intentionally misleading. The district court's analysis of that question relied on an impermissible chain of hypotheticals and inferences against Eight Mile. As to knowledge, the district court concluded that Mr. Martin had to have known about the absence of a license when UMG did not come to him in 2016 about extending a pass-through. But a jury would be entitled to conclude that Mr. Martin reasonably believed that the fact that Spotify was paying royalties indicated that it had obtained a license (*Kalamazoo*, *supra*), or that he was not sure whether a pass-through license would have expired until he began the audit in 2018. *See supra* §I.B.4.a.

51

The district court's contrary finding rested on the inference that, based on the fact that there was a "lawsuit" about UMG's authority to issue licenses, "it is difficult to believe" that Eight Mile didn't "ever learn[] the basic fact of whether UMG had granted mechanical licenses to Spotify." Order, RE.704, PageID#64272. But the court did not identify a single piece of paper from that lawsuit that answered that question. The court's inference is hardly the *only* inference that may be drawn from those lawsuits.

A jury could also have found that Eight Mile believed that the royalty payments signaled that Spotify had a license, especially given the testimony from Spotify's own expert confirming that royalty payments could mislead a publisher. *See supra* §I.B.4.a. The district court rejected this possibility because it was "close to unthinkable" that Eight Mile would "simply not bother to do the rudimentary legwork to find out whether its core assets were being wrongfully exploited." Order, RE.704, PageID#64273. But the whole point is that the fact of the payments to Eight Mile meant it had no reason to believe that its assets were being exploited, in a context where those payments were consistent with the possibility that Spotify had gotten a *compulsory* license. Again, these questions at minimum should have gone to a jury.

The court also found that, even if Mr. Martin learned about the potential loss of a license in 2018, a jury would *be required* to find facts supporting equitable

estoppel because he waited 18 months to bring a lawsuit. Order, RE.704, PageID#64272. But extensive record evidence showed that Eight Mile was engaged in an investigation during that period, with extensive communications with HFA.2018-2019 Levinsohn Emails, RE. 666-10, PageID#60293-301 (unredacted at RE.366-3, pp.1-10). A jury could reasonably find that Eight Mile was not equitably estopped simply because it took 18 months to investigate the issue before filing a lawsuit. Consistent with Mr. Martin's testimony that "at or around 2016… Spotify would have the obligation to come to us for a license, because there would have been a termination [of any pass-through license]" (Martin Depo., RE.619-8, PageID#49744), a jury could find that Eight Mile acted with reasonable assiduousness in requesting its transactional counsel to investigate, engaging in correspondence, and ultimately filing its lawsuit within three years.

Third, there are at minimum jury questions as to whether Eight Mile engaged in any misleading representation concerning abstention from suit—as *Petrella* requires. And if the Court finds that intentionally misleading silence can support estoppel after *Petrella* (though it cannot), there is certainly a jury question as to whether Eight Mile's silence was intentionally misleading.

In the patent context, the Federal Circuit has stated that "[t]o justify summary judgment of equitable estoppel, any inference that a patentee made a misleading communication by omission or acquiescence 'must be the *only* possible inference

53

from the evidence.'" *Ferring B.V. v. Allergan, Inc.*, 980 F.3d 841, 853 (Fed. Cir. 2020) (emphasis in original; citation omitted).

Here, that was certainly not the only permissible inference from the evidence. To the contrary, as discussed above, the district court credited a bizarre narrative of its own creation in which Eight Mile misled Spotify because it wanted to give up a pre-MMA guarantee of massive damages so that it could instead bring a lawsuit challenging the MMA. *See supra* §I.B.4.b. That narrative should be disregarded altogether because it is not grounded in any record evidence or testimony at all, but it *certainly* cannot support summary judgment against Eight Mile.

This finding by the district court–based on at most speculation and inference– is highly problematic and takes from the jury a quintessential issue of intent and credibility. A jury could certainly have found otherwise, given that (a) there was no way to predict that the MMA would be coming in the future, (b) the limitation on liability is actually a large obstacle to any suit, and (c) there was no evidence that Eight Mile was uniquely situated to bring a constitutional challenge to the MMA. Indeed, Eight Mile *actually* invoked the doctrine of constitutional avoidance and argued that the Court need not reach the issue if it found (as Eight Mile urged) that Spotify and HFA did not qualify for the limitation of liability found in the MMA. If, as the district court presumed, Eight Mile was merely trying to challenge the

constitutionality of the MMA in order to leverage some better outcome (which again, is nonsensical), it would make little sense to invoke constitutional avoidance.

Fourth, the district court's conclusion that Spotify lacked knowledge of its infringement of Eight Mile and relied on Eight Mile's silence relied on numerous improper inferences in favor of Spotify. A reasonable jury might conclude, as discussed above, that Spotify knew that it lacked a license for Eight Mile because it was deliberately violating the law to maximize its profits, and that Spotify did not reasonably rely on Eight Mile's silence to its detriment because it would have kept infringing regardless of what Eight Mile did. Indeed there is significant evidence of *continued* copyright infringement even after Eight Mile brought this suit. Jessel Decl., RE.659-4, PageID#58384-85, 58394-98.

In short, the district court's opinion does not track the summary judgment standard. A jury comparing the relative conduct of the parties, including the fact that a multi-billion-dollar company like Spotify acted in intentional derogation of the rights of copyright owners and deliberately failed to obtain proper licensing, and in fact instructed HFA to backdate NOIs to mislead publishers, could easily find the application of equitable estoppel to be unwarranted.

### B. The District Court's Bifurcation of the Action Below Should Preclude a Finding of Equitable Estoppel at Summary Judgment

Much of the district court's analysis rested on Spotify's alleged knowledge of whether it was infringing the EMS Compositions. That issue was inappropriate for

summary judgment. Willfulness (which is obviously informed by Spotify's knowledge) was expressly reserved for phase two of the litigation. Initial Case Management Order, RE.89, PageID#686. Indeed, Spotify argued in multiple filings that any discovery regarding knowledge or willfulness *had* to be reserved for the second phase of the action. Spotify's Memorandum ISO Protective Order, RE.222, PageID#2041-42; Spotify's Memorandum ISO Reconsideration, RE.242, PageID#2689-91.

## CONCLUSION

Eight Mile respectfully requests this Court reverse the district court, grant summary judgment in Eight Mile's favor on liability and remand for discovery and a trial on damages, or, alternatively, that the Court reverse the grant of summary judgment in favor of Spotify and HFA.

Dated: January 30, 2025                Respectfully submitted,

                                       /s/ *Richard S. Busch*
                                       Richard S. Busch (TN Bar # 014594)
                                       Andrew H. "Drew" Davis (TN Bar # 034203)
                                       David M. Niemierzycki (TN Bar # 039921)
                                       King & Ballow
                                       26 Century Boulevard, Ste. NT700
                                       Nashville, TN 37214
                                       Telephone: (615) 726-5422
                                       Facsimile: (615) 726-5417
                                       rbusch@kingballow.com

                                       Daniel B. Asimow
                                       Arnold & Porter Kaye Scholer LLP
                                       3 Embarcadero Center, 10th Floor
                                       San Francisco, CA 94111-4024
                                       T: (415) 471-3100

                                       Elisabeth S. Theodore
                                       Arnold & Porter Kaye Scholer LLP
                                       601 Massachusetts Ave., NW
                                       Washington, DC 20001
                                       T: (202) 942-5000

       *Counsel for Appellants Eight Mile Style, LLC and Martin Affiliated, LLC*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,997 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font.

Dated: January 30, 2025

Respectfully submitted,

*/s/ Richard S. Busch*
Richard S. Busch
One of the Attorneys for Appellant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing, Appellants' Principal Brief was filed via the Court's CM/ECF system causing the same to be served on all counsel of record.

/s/ Richard S. Busch
Richard S. Busch

**ADDENDUM**

**DESIGNATION OF RELEVANT ORIGINATING DOCUMENTS**

Pursuant to 6 Cir. R. 28(b)(1)(A)(i), Eight Mile respectfully designates the following relevant originating court documents, with Page ID # range, where applicable:

- Complaint, RE.1, PageID#1-32

- Initial Case Management Order, RE.89, PageID#686

- Amended Compl., RE.97, PageID#783

- Order on Motion to Dismiss, RE.165, PageID#1453

- Spotify's Memorandum ISO Motion for Protective Order, RE.222, PageID#2041-42

- Spotify's Memorandum ISO Motion for Reconsideration, RE.242, PageID#2689-91

- 2009 Kobalt Agreement, Under Seal at RE.356-20, pp.1-31

- 2010 Termination, Under Seal at RE.358-1, pp.1-3

- 2011 Agreement, Under Seal at RE.358-2, pp.1-51

- HFA Administrative Agreement, Under Seal at RE.360-5, pp.20-22

- Spotify's Motion for Summary Judgment, RE.553, PageID#42218

- Eight Mile's Opposition to Spotify's Motion for Summary Judgment, RE.556, PageID#42278-365

- Bridgwood Depo. Vol. I, RE.585-1, PageID#43866-68, 43873-74

- Bridgwood Depo. Vol. II, RE.585-2, PageID#43902

- Kobalt's Response to Spotify's SUMF, RE.594, PageID#46427-29

- Martin Depo., RE.619-8, PageID#49744

- Pattenden Depo., RE.622-5, PageID#50174

- Kohn Declaration, RE.654-1, PageID#56597-600

- Kohn Expert Report, RE.654-4, PageID#56785-94, 56802-03

    - Unredacted at Sealed RE.355-2, pp.122-131

- Kohn Rebuttal Report, RE.654-6, PageID#56938-40

- Kohn Rebuttal Report, RE.654-7, PageID#56974-87

- Kohn Rebuttal Report, RE.654-8, PageID#57041-44

- Corton Declaration, RE.654-11, PageID#57264

- Corton Expert Report, RE.654-12, PageID#57277-78

- Corton Rebuttal Report, RE.654-13, PageID#57299-306

- Martin Declaration, RE.659-2, PageID#58371

- Jessel Declaration, RE.659-4, PageID#58384-85, 58394-98

- Smith Depo., RE.659-10, PageID#58428-30, 58436-37, 58440-58453

    - Unredacted at Sealed RE.360-3, p. 4-6, 12, 22, 29

- February 2016 Emails, RE.659-12, PageID#58472-75

- March 2015 Emails RE.659-13, PageID#58476-78

- August 2013 Emails, RE.659-14, PageID#58479-82

- NOIs, RE.659-16, PageID#58484-561

- Busby Email, RE.663-5, PageID#59487

- Levinsohn Email, RE.663-7, PageID#59495-96

- New Yorker Article, RE.663-16, PageID#59542-49

- Levy Depo., RE.665-12, PageID#60137-38, 60140, 60142

- Raso Depo., RE.665-13, PageID#60152

  o Unredacted at Sealed RE.363-1, p. 7

- Ek Video Interview, RE.665-16, PageID#60180 (manually lodged)

- Caternor Depo., RE.666-2, PageID#60249-56

- Levinsohn Emails, RE.666-10, PageID#60293-301

  o Unredacted at Sealed RE.366-3, pp.1-10

- Jackson Depo., RE.666-16, PageID#60343-44

  o Unredacted at Sealed RE.366-9, p.4-5

- Martin Depo., RE.666-18, PageID#60363-67

- Selden Depo., RE.666-19, PageID#60413

- Bridgewood Depo., RE.666-20, PageID#60443

  o Unredacted at Sealed RE.370-5, p.18

- Kohn Depo., RE.666-22, PageID#60460

- Eight Mile's Response to Spotify's SUMF, RE.669, PageID#60621, 60732-33, 60776-77

    - Unredacted at Sealed RE.436-1, pp.169-70

- Martin Depo., RE.670-15, PageID#61159

- Smith Depo., RE.671-1, PageID#61440

- Kanner Email, RE.671-3, PageID#61453

- Levinsohn Email, RE.671-9, PageID#61493

- Martin Opposition Declaration, RE.671-24, PageID#61651-52

- Catlett Opposition Declaration, RE.671-25, PageID#61657-58

- Spotify's 2014 Comments to the Copyright Office, RE.674-4, PageID#61814

- Memorandum Order on Summary Judgment ("Order"), RE.704, PageID#64234-64295

- Order, RE.705, PageID#64296-97

- Entry of Judgment, RE.722, PageID#65054

- Notice of Appeal, RE.732, PageID#65839-43

## DECISIONS NOT AVAILABLE IN PUBLICLY ACCESSIBLE ELECTRONIC DATABASES

Pursuant to Fed. R. App. P. 32.1(b) and 6 Cir. R. 32.1(a), Eight Mile states there are no cited, unpublished decisions which are not available on publicly accessible electronic databases.